037539/01245/MHW/JJL

# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GREGORY SCOTT WILSON,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SALEH OBAISI, M.D., et al.,<br><br>　　　　　Defendants. | Case Number 16-cv-8446<br><br>Judge Sharon Johnson Coleman |

### DEFENDANTS' FED. R. CIV. P. 50 MOTION FOR JUDGMENT AS A MATTER OF LAW IN A JURY TRIAL

NOW COME Defendants, WEXFORD HEALTH SOURCES, INC. ("Wexford"), LA TANYA WILLIAMS, P.A. ("Williams"), and DEFENDANT, GHALIAH OBAISI, as Independent Executor of the Estate of SALEH OBAISI, M.D. ("Dr. Obaisi"), Deceased, by and through their attorneys, Matthew H. Weller and Joseph J. Lombardo of CASSIDAY SCHADE LLP, and for their Fed. R. Civ. P. 50 Motion for Judgment as a Matter of Law in a Jury Trial, hereby state as follows:

### A. Plaintiff Did Not Come Forth with Sufficient Evidence to Support a *Monell* Claim Against Wexford

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court established that a municipality may face liability for money damages under § 1983 only if the unconstitutional act about which the plaintiff complains was caused by (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). Wexford, a private corporation contracted by IDOC, is subject to a

*Monell* claim just like any municipality would be. *See, e.g., Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). "To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the "moving force" behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833-34 (7th Cir. 2012). Thus, to prevail on his *Monell* claim against Wexford, Plaintiff must show that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014).

> *1. Wexford's Policies and Practices Were Not the "Motivating Force" Behind the Alleged Deprivation of Plaintiff's Constitutional Rights*

Here, Plaintiff has not met the extremely high burden of proving Wexford's policies and procedures were the "motivating force" behind his alleged constitutional claim[1]. To this end, Plaintiff's primary argument in support of his claim against Wexford is based upon its written guidelines, which were presented to the jury on several occasions. However, this argument is misguided on several levels. First, Wexford's written Medical Policies and Procedures do not state that patients with <u>manually reducible inguinal hernias</u> are not candidates for surgical consultation. (*See* "Exhibit 1"- Plaintiff's Trial Exhibit 6.1: Wexford's Guidelines regard the Repair of Abdominal Wall/Inguinal Hernias). Instead, they state "patients with <u>stable abdominal wall hernias</u> are not, *in general*, candidates for herniorrhaphy and will be monitored and treated with appropriate non-surgical therapy." *Id.* [emphasis added]. Here, Plaintiff's alleged medical

---

[1] As a threshold matter, it is clear from the undisputed record of treatment that the individual Defendants were not deliberately indifferent to Plaintiff's alleged medical condition, as further detailed herein. As such, because there is no underlying constitutional claim against the individual Defendants, Plaintiff cannot show that his alleged injury was the result of the corporation's official policy or widespread practice. *Montague v. Wexford Health Sources, Inc.*, 615 Fed. Appx. 378, 379 (7th Cir. Ill. 2015)("There cannot be vicarious liability without primary liability. The individual defendants all prevailed in this suit, so there is no constitutional tort for which Wexford could be vicariously liable.") citing *Los Angeles v. Heller*, 475 U.S. 796, (1986).

condition is a very small manually reducible inguinal hernia. As such, despite Plaintiff's contention to the contrary, Wexford does not have an express written policy that states patients presenting with manually reducible inguinal hernias, such as Wilson, are not candidates for surgery.

Moreover, the decision to treat Plaintiff conservatively before referring him for a general surgery evaluation was not the result of Wexford's policies or practices. Instead, the uncontroverted evidentiary record reveals the course of treatment provided to Wilson for his hernia was based solely upon the medical judgment of Plaintiff's treating physicians. This is not surprising, as Wexford's Medical Policies and Procedures regarding treatment of hernias explicitly state that "[d]ecisions regarding patient suitability for consideration of abdominal wall herniorrhaphy must be made on a case-by-case basis. These recommendations are intended only as a guide for the site physicians are not intended to replace hands-on clinical judgment." *Id.*

The testimonial evidence in this case further supports the conclusion that Wexford's written guidelines had no bearing on the treatment of Plaintiff's hernia. To this end, it is undisputed that as Medical Director, Dr. Obaisi was the individual that was charged with making the decision as to whether Plaintiff would be evaluated for surgery. Upon being questioned regarding the role Wexford's written guidelines played in his decision regarding the management of Wilson's hernia, Dr. Obaisi testified as follows:

> "Q: How often do you, if you do, review the policies and procedures of Wexford?
>
> A: Not very often.
>
> Q: Can you tell me since you've been Medical Director whether you read the policies and procedures regarding the repair of abdominal wall and inguinal hernias?
>
> A: No, I have not read.

> Q: Isn't it part of your responsibilities to be familiar with the substance of those policies and procedures?
>
> A: Basically, I am a surgeon, I fixed a lot of hernias so I know the rules and I know when to send the patient. I take it as my own personal responsibility." (23:16-24:8).

Based upon the Dr. Obaisi's testimony, it is undisputed that he did not even read Wexford's hernia guidelines, much less rely on them in his treatment of Mr. Wilson. In fact, Mr. Wilson testified himself that he has no knowledge as to whether Dr. Obaisi consulted these written guidelines in connection with determining whether she should be sent for further evaluation.

Moreover, while Williams did not have the authority to send Plaintiff offsite, she too testified that Wexford's guidelines had no influence over her treatment decisions regarding the management of Wilson's hernia. Specifically, when questioned about this issue by Plaintiff's counsel, Williams testified that "I treat people, not paper." Thus, because Plaintiff has failed to come forth with evidence that Wexford's written guidelines carried any influence over the medical providers at Stateville Correctional Center, Wilson has failed to prove Wexford's policies and procedures were the driving force of his purported injuries.

   2. *Plaintiff Failed to Prove Wexford Maintained a Widespread Policy or Practice that was Unconstitutional*

A plaintiff asserting a policy or practice claim ultimately "must demonstrate that there is a policy at issue rather than a random event." *Thomas*, 604 F.3d at 303. "This may take the form of an implicit policy" or "a series of violations to lay the premise of deliberate indifference." *Id.* [internal citations and quotations omitted]. While there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability. It is clear that the conduct complained of must have occurred more than once, or even three times. *See Arita v. Wexford*

*Health Sources, Inc*., 2016 U.S. Dist. LEXIS 150106, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016)(holding there were "no facts—outside of those related to [the plaintiff's] own experience—that plausibly suggest Wexford has maintained a widespread custom or practice of ignoring [] inmates' medical needs."; *see also Taylor v. Wexford Health Sources, Inc*., 2016 U.S. Dist. LEXIS 76341, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016)(dismissing plaintiff's *Monell* claim because the plaintiff did "not allege that any other detainee suffered from similar issues" and only included "a conclusory reference to other prisoners' experiences."); *see also Winchester v. Marketti*, 2012 U.S. Dist. LEXIS 82761, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012)("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity.").

In the case at bar, Plaintiff has only presented evidence regarding his own alleged experiences. He has not come forth with any admissible evidence which even suggests that these purported practices occurred outside of Wilson's own experience. To the contrary, the only evidence regarding circumstances outside of Plaintiff's experiences indicates that inmates with reducible inguinal hernias, such as Plaintiff's, were regularly sent offsite for surgical evaluation. In this regard, Dr. Obaisi testified:

> "Q: Other than Mr. Wilson, have you ever discussed hernia cases with Wexford in collegial reviews?
>
> A: My own guess, this year, I send maybe 15 or 20 inguinal hernia for repair to UIC.
>
> Q: In 2015?
>
> A: 2014.
>
> Q: 2014. So you sent 15 cases?
>
> A: Maybe around there. I sent large number. I send large number.

> Q: Do you know how many – and these would be for surgical evaluation and treatment, is that right?
>
> A: Correct
>
> Q: But I am asking about people who come in with reducible hernias and then who you don't send out? If you sent 15 out, how many in 2014 would you say you saw that you didn't send out?
>
> A: At the present time I almost send everybody.
>
> Q: And how long has then been true?
>
> A: Since I came to Stateville, I been doing this policy." (32:18-33:24)

Based upon the uncontroverted evidence, it is evident that the practice at Stateville is to send inmates with reducible inguinal hernias offsite for surgical evaluation. Plaintiff has not come forth with any evidence to the contrary. As such, based upon Plaintiff's failure to adequately support his *Monell* claim with evidence of an unconstitutional policy or practice, Wexford is entitled to dismissal.

**B.     Plaintiff's Claim For Punitive Damages Against Wexford Fails as a Matter of Law**

Plaintiff's claim for punitive damages fails because he has not proven any set of facts that would allow him to recover punitive damages. In this regard, punitive damages may be awarded under 42 U.S.C. § 1983 only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922-23 (8th Cir. 2011).

Here, Plaintiff's sole basis of liability against Wexford is based upon its written hernia guidelines. As described further in the preceding section, these guidelines did not play a factor in any medical decisions concerning the management of Plaintiff's hernia. Notwithstanding, even if they did, Plaintiff has failed to introduce any evidence that these policies are such a deviation from professionally accepted standards that a jury could come to the conclusion that they are

6

motived by "evil" or "callous indifference." To this end, Wexford's written guidelines follow the "wait and see" approach in treating reducible inguinal hernias. As evidenced by the testimony of Plaintiff's treating general surgeon, Antonio Gangemi, M.D. ("Dr. Gangemi"), this approach regarding the conservative management of hernias has been thoroughly vetted through studies, and has come to be a well-established medical standard. Plaintiff has not presented any medical evidence that these written guidelines are outside the bounds of accepted medical practices. Thus, without evidence that Wexford's policy is so far afield from what is accepted by the general surgery community, Plaintiff cannot establish that he is entitled to punitive damages.

**C.    Plaintiff Failed To Establish the Individual Defendants Were Deliberately Indifferent**

Correctional officials may not act with deliberate indifference to an inmate's serious medical needs. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference has an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The test of deliberate indifference is a significantly high burden for a plaintiff to overcome and the burden is on the prisoner to demonstrate deliberate indifference to a serious medical need or condition. *Roe v. Elyea* 631 F.3d 843, 857 (7th Cir. 2011).

The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Duckworth v. Franzen,* 780 F.2d 645, 652-53 (7th Cir. 1985). Deliberate indifference constitutes unnecessary and wanton infliction of pain, which is "repugnant to the conscience of

mankind," or which is "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." *Estelle* at 106-07. Negligence, gross negligence, or even tortuous recklessness is not enough. *Id.* Unsuccessful medical treatment, neglect, or medical malpractice is not sufficient. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Furthermore, "[an inmate] is not entitled to demand specific care. He is not entitled to the best care possible. He is entitled to reasonable measures to meet a substantial risk of serious harm to him." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Moreover, mere disagreement with a doctor's recommended course of treatment does not constitute deliberate indifference. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir.2007). Medical decisions which are classic examples of matters for medical judgment are beyond the Eighth Amendment's purview. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Furthermore, a prison official "is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Moreover, when considering whether care evidences deliberate indifference to a serious medical need, the Court must examine the totality of an inmate's medical care. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). To infer deliberate indifference on the basis of a prison physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir.1997).

"In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer '**verifying medical evidence**' that the delay (rather than the inmate's underlying medical condition) caused some degree of harm." *Williams v. Leifer*, 491 F.3d 710, 714-15 (7th Cir. 2007)[emphasis added]. "Delay is not a factor that is

either always or never, significant. Instead, the length that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Here, Plaintiff has failed to meet his burden in demonstrating the individual Defendants were deliberately indifferent to a serious medical need. In regard to Williams, the only evidence presented was that said Defendant evaluated Wilson during a February 21, 2012 bi-annual, routine, physical examination with Williams. This physical was not prompted by a request for medical attention; but rather, it was a periodic appointment that all inmates receive. During this examination, Williams observed Plaintiff's small, manually reducible hernia. Plaintiff made no complaints regarding his hernia, and it was only brought to Williams' attention because she discovered it upon physical examination. Williams recommended a treatment plan that included patient education and observation of the condition. Plaintiff acknowledges he was already prescribed to pain medication at the time of this appointment. Based upon Dr. Gangemi's testimony, it is undisputed that at the time of this examination, Plaintiff's condition did not require emergent or urgent medical intervention. Dr. Gangemi's testimony further established that Williams' conservative management of Plaintiff's small, reducible hernia condition complied with the standard of care. Furthermore, Williams' decision to recommend a course of conservative, non-operative treatment in lieu of further surgical evaluation can only be classified as an exercise of her medical judgment, which is beyond the purview of the Eighth Amendment. *Snipes* at 591. While Plaintiff may have wanted a physician that treated him more aggressively, Wilson is not entitled to demand specific care. *Norfleet* at 396.

As it pertains to Dr. Obaisi, the uncontroverted evidence reveals that on the first occasion in which Plaintiff was seen by Dr. Obaisi regarding his hernia condition (March 3, 2014), Dr.

Obaisi elected to alter the course of treatment from conservative to more aggressive, and immediately approved Wilson for a general surgery consultation and hernia repair surgery. Thus, Dr. Obaisi provided Plaintiff with the exact treatment Plaintiff was seeking the very first time he was made aware of Wilson's hernia. Clearly, nothing about this course of treatment, or the actions by Dr. Obaisi rise to the level of criminal recklessness. *Sain v.Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

Furthermore, it is anticipated Plaintiff will argue that Dr. Obaisi was deliberately indifferent by delaying the surgical consultation after he approved it. However, this argument also falls short. To this end, it is undisputed that on March 27, 2014, Plaintiff was sent for a scheduled general surgery consultation at Silver Cross Hospital, but the consultation did not occur because the IDOC correctional officers brought Plaintiff to the appointment late. Certainly, Dr. Obaisi cannot be held accountable for an inadvertent mistake of IDOC correctional staff. In any event, not getting Plaintiff to his appointment on time constitutes, at most, negligence. However, negligence, neglect, or medical malpractice is not sufficient to establish a claim for deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

After Plaintiff inadvertently missed his appointment at Silver Cross Hospital, Dr. Obaisi then approved a general surgery evaluation at UIC. Based upon Dr. Gangemi's testimony, Plaintiff's general surgery consultation at UIC did not take place until August 1, 2014 because UIC did not prioritize Plaintiff's condition as urgent. Moreover, when Plaintiff presented for an initial evaluation with Dr. Gangemi on August 1, 2014, it was noted his condition was reducible, so small that it was "barely visible", and that there was no evidence of incarceration or strangulation. While Plaintiff's surgery did not take place until September 10, 2014, Dr. Gangemi testified that this timeframe was reasonable because Plaintiff's condition was not

urgent. As such, there is no evidence, medical or otherwise, that suggests that the purported delay between the time Plaintiff was approved for a surgical evaluation and when the surgery took place had any adverse effects on Plaintiff's alleged medical condition. Thus, because the evidentiary record is absent evidence that any alleged delays caused him harm, Wilson's claims does not rise to the level of deliberate indifference.

Moreover, Plaintiff attempted to impute liability upon Dr. Obaisi and Williams based upon allegations that he submitted several written requests for medical attention for his hernia to the Stateville Healtcare Unit during the time period prior to his March 3, 2014 appointment. However, as the Seventh Circuit held in *Johnson v. Snyder*, 444 F.3d 579 (7th Cir. 2006), written requests directed to a prison official are insufficient to defeat summary judgment where the defendant has demonstrated that such correspondence is often handled by other prison personnel, and the defendant did not otherwise receive or review those correspondences. *Johnson* at 584. Here, the uncontroverted evidentiary record reveals that written requests for medical attention are screened and triaged by nurses, not physicians such as Dr. Obaisi or Williams. In fact, <u>Wilson admitted that he has no knowledge as to whether Dr. Obaisi or Williams ever personally reviewed his written requests for medical attention, and that he has no involvement in the sick call triaging and scheduling process</u>. Thus, following the holding in *Johnson,* Plaintiff cannot survive summary judgment as to Dr. Obaisi and Williams based upon alleged written requests he purportedly submitted to the Stateville Healthcare Unit.

Based on the foregoing, it is evident Defendants reasonably responded to Plaintiff's reducible inguinal hernia by providing Wilson with treatment that complied with medically accepted standards. Thus, Defendants actions do not demonstrate deliberate indifference; but,

rather, prudent medical judgment that resulted in appropriate treatment based upon the nature of Plaintiffs' condition, complaints, and clinical presentation.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., LA TANYA WILLIAMS, P.A., and DEFENDANT, GHALIAH OBAISI, as Independent Executor of the Estate of SALEH OBAISI, M.D., Deceased, respectfully request that this Court enter an Order granting their Fed. R. Civ. P. 50 Motion for Judgment as a Matter of Law in a Jury Trial, dismissing this suit with prejudice, and granting any other relief this Court deems just and appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Joseph J. Lombardo
One of the Attorneys for Defendants, WEXFORD HEALTH SOURCES, INC., LA TANYA WILLIAMS, P.A., and DEFENDANT, GHALIAH OBAISI, as Independent Executor of the Estate of SALEH OBAISI, M.D., Deceased

Matthew H. Weller/ ARDC No. 6278685
Joseph J. Lombardo/ ARDC No. 6306466
CASSIDAY SCHADE LLP
222 West Adams, Suite 2900
Chicago, IL 60606
(312) 641-3100
mweller@cassiday.com
jlombardo@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2018, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Joseph J. Lombardo

8535272 JLOMBARD;JLOMBARD